**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Alan Amirault,

        Plaintiff,

v.

Lorrie Billy, et al.,

        Defendants.

No. CV-25-00555-TUC-RM

**ORDER**

On October 6, 2025, Plaintiff Alan Amirault initiated this action by filing a pro se Complaint (Doc. 1) and an Application for Leave to Proceed in Forma Pauperis (Doc. 2). On March 6, 2025, Plaintiff filed a Motion for Leave to File a First Amended Complaint. (Doc. 6.) For the following reasons, the Court will grant the Application for Leave to Proceed in Forma Pauperis, deny the Motion for Leave to File a First Amended Complaint, and dismiss the Complaint with leave to amend.

## I.    Application for Leave to Proceed in Forma Pauperis

The Court may authorize the commencement and prosecution of any action without prepayment of fees if a litigant submits an affidavit showing that he is unable to pay the fees. 28 U.S.C. § 1915(a)(1). In his Application to Proceed in Forma Pauperis, Plaintiff avers that he is unemployed, that his only income is from disability insurance benefits, that his expenses nearly equal his income, that he has a total of $20.00 in his bank account, and that he has no assets except his vehicle. (Doc. 2.) The Court finds that Plaintiff is unable to pay the filing fees for this action and will grant Plaintiff's Application for Leave to Proceed

in Forma Pauperis.

## II.    Motion for Leave to File a First Amended Complaint

Plaintiff moves for leave to file a first amended complaint. (Doc. 6.) Pursuant to Federal Rule of Civil Procedure 15(a)(1), a party may amend its pleading "once as a matter of course" within 21 days after serving it or 21 days after service of a responsive pleading or service of a motion under Rule 12(b), (e), or (f).  As Plaintiff's initial Complaint has not yet been served, Plaintiff is entitled to amend as a matter of course.

However, Local Rule of Civil Procedure 15.1(b) requires a party filing an amended pleading as a matter of course to file a separate notice with "a copy of the amended pleading that indicates in what respect it differs from the pleading which it amends, by bracketing or striking through the text that was deleted and underlining the text that was added." LRCiv 15.1(b).  Here, Plaintiff's Motion for Leave to File a First Amended Complaint fails to comply with this requirement. Accordingly, the Court will deny the Motion.[1]  As discussed below, the Court will grant Plaintiff leave to file an amended complaint that corrects the deficiencies identified in this Order.

## III.    Statutory Screening of Complaints

The Prison Litigation Reform Act states that a district court "shall dismiss" an in forma pauperis complaint if, at any time, the court determines that the action "is frivolous or malicious" or that it "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2). Section 1915(e) "applies to all in forma pauperis complaints, not just those filed by prisoners." *Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000) (en banc); *see also Calhoun v. Stahl*, 254 F.3d 845 (9th Cir. 2001) (per curiam).

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "[A] complaint must contain

---

[1] Although the Court might, under certain circumstances, excuse a pro se plaintiff's failure to strictly comply with LRCiv 15.1(a)-(b), the Court finds that requiring strict compliance here is appropriate given the length of Plaintiff's original Complaint and because Plaintiff may benefit from the guidance set forth in this Order in drafting an amended complaint.

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

The Court must "construe pro se filings liberally." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). A complaint filed by a pro se litigant "must be held to less stringent standards than formal pleadings drafted by lawyers." *Id.* (internal quotation omitted). Nevertheless, "a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

If the Court determines that a pleading could be cured by the allegation of other facts, a pro se litigant is entitled to an opportunity to amend before dismissal of the action. *See Lopez*, 203 F.3d at 1127-29.

### IV. Plaintiff's Complaint

In this action, Plaintiff brings claims arising from the termination of his involvement as a volunteer at a thrift store in Benson, Arizona ("the thrift store") operated by non-profit corporation Disabled American Veterans, Department of Arizona, Inc. (Doc. 1 at 1-4.) Plaintiff brings suit against Lorrie Billy[2]—"the de facto store manager and supervisor with authority over scheduling and discipline"—as well as Disabled American Veterans, Department of Arizona, Inc., and an individual named as "Commander John," who Plaintiff alleges "exercised operational authority (receipt reconciliation, discipline, removal)." (*Id.* at 4.)

In his Complaint, Plaintiff alleges the following. Plaintiff's involvement with the thrift store began in May 2022, as part of a ten-hour community service requirement he incurred as a result of a criminal offense. (*Id.* at 4, 8.) Plaintiff explains that he continued

---

[2] Plaintiff spells this name "Lori Billy" in some parts of his Complaint. (Doc. 1 at 1, 4.)

working at the thrift store long after he fulfilled his community service requirement, until March 2025. (*Id.* at 1.) Plaintiff was "ultimately . . . promoted to shift lead," and "routinely opened/closed, handled the safe, managed the drawer, and ran entire shifts." (*Id.* at 4.) Although he was "called a volunteer" and was not paid, Plaintiff was permitted, per shift, up to five free items of clothing valued at $1, and received a 50% discount on all same-day purchases. (*Id.* at 5.)

At the thrift store, there "was no formal work schedule," but volunteers knew what days they were volunteering and could be "asked to cover for other volunteers." (*Id.* at 4-5.) The thrift store "provided no formal training program" and "direction was inconsistent"; for example, volunteers completed tasks at the store in different ways depending on who was there on a given day. (*Id.* at 5.) Volunteers "signed a one-page 'training' form" but consistent guidance was not adhered to—"there [were] no checklists, no set of do's and don'ts." (*Id.*) "[C]ash-handling practices" were "inconsistent and chaotic." (*Id.* at 10.)

Plaintiff suffers from "PTSD, ADHD, bipolar disorder, enduring cognitive effects following 14 ECT sessions . . . and physical pain issues." (*Id.* at 3.) He "gradually disclosed these conditions" to some of the other volunteers "in promotion of positive mental health[.]" (*Id.* at 5.) During his last month of volunteering, Plaintiff informed Lorrie (Lori) Billy and one other individual that he was undergoing medication changes and he "might be a little more loopy than usual." (*Id.* at 5.)

Although Plaintiff's Complaint is not completely clear on this point, it appears that near the end of his involvement with the thrift store, Plaintiff was accused of stealing money from the thrift store's cash register. (*See id.* at 5-7.) Plaintiff explains that the cash-register had monetary discrepancies while "leaders experimented with settings," denies running any report that would have reset the day's totals, and recounts two instances in which he turned in money he inadvertently found in the store. (*Id.*)

Plaintiff alleges that the specific incident which led to the end of his involvement with the thrift store occurred on March 15, 2025. (*Id.* at 7.) Plaintiff states that he "set his wallet . . . in the back room . . . for a matter of minutes." (*Id.*)  A leader at the thrift store

- 4 -

"promptly told Plaintiff to retrieve it, and he immediately did so." (*Id.*) Later, Plaintiff discovered $80 missing from his wallet. (*Id.*) Plaintiff reported the loss to the same leader at the thrift store who had told him to retrieve the wallet, and "requested an internal investigation and police involvement if appropriate." (*Id.*) The following day, Plaintiff was called to a meeting at the thrift store with Commander John, where he was informed that thrift store management "didn't want someone who leaves their wallet out [of] control" and Plaintiff was told to "hit the road" after a "heated verbal back-and-forth." (*Id.* at 8.)

After the wallet incident and subsequent meeting, Plaintiff heard secondhand that Commander John said that "if Plaintiff retaliated in any way, [Commander John] would call the police and make a criminal complaint implying that Plaintiff had been stealing[.]" (*Id.* at 7-8.) Plaintiff explains that he is a "three-time felon" and it appears from the Complaint that he believes he may have been targeted with accusations of stealing due to his criminal history. (*Id.* at 8-9.)

Plaintiff brings eight counts arising from these events, including claims under the Americans with Disabilities Act ("ADA"), the Fair Labor Standards Act ("FLSA"), the Arizona Minimum Wage Act ("AMWA"), the Arizona Employment Protection Act ("AEPA"), and various common law causes of action. (Doc. 1.)

## V.    Discussion

### a.  Americans with Disabilities Act Claims[3]

In Counts I-V of the Complaint, Plaintiff brings three employment discrimination claims under Title I, a discrimination in public accommodations claim under Title III, and a retaliation claim under Title V.[4] (Doc. 1 at 9-13.)

---

[3] An essential element of any ADA claim is that the plaintiff be disabled within the meaning of the ADA. *Equal Emp. Opportunity Comm'n v. BNSF Ry. Co.*, 902 F.3d 916, 922-23 (9th Cir. 2018), *as amended* (Sept. 12, 2018). This means having an impairment that "substantially limits one or more major life activities." 42 U.S.C. § 12102(1). "Major life activities" include thinking and concentrating. 42 U.S.C. § 12102(2)(A). Since Plaintiff alleges that his PTSD, ADHD, and bipolar disorder substantially limit his thinking and concentrating abilities, the Court finds Plaintiff has adequately alleged that he is disabled within the meaning of the ADA.
[4] Although each of Plaintiff's ADA claims is brought against Disabled American Veterans, Department of Arizona, Inc.—a cognizable defendant under the ADA—Plaintiff also alleges that Lori (Lorrie) Billy and Commander John are individually liable for each of his ADA claims. There is no individual liability, however, under Title I of the ADA. *Walsh v.*

### i.  Standing

As an initial matter, it appears that Plaintiff lacks standing to pursue the Title III and Title V claims he has asserted under the ADA. While damages may be obtained for employment discrimination claims brought under Title I, only injunctive relief is available for violations of Title III and retaliation claims under Title V. *Wander v. Kaus*, 304 F.3d 856, 858 (9th Cir. 2002) ("[O]nly injunctive relief is available for violations of Title III."); *Alvarado v. Cajun Operating Co.*, 588 F.3d 1261, 1270 (9th Cir. 2009) ("[D]amages are not available for ADA retaliation claims . . . such claims are limited to . . . equitable relief.").

A plaintiff must demonstrate constitutional standing separately for each form of relief requested. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC) Inc.*, 528 U.S. 167, 185 (2000). Standing to seek injunctive relief depends on whether the movant is likely to suffer future injury from the challenged action. *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983). The asserted future injury must be "actual and imminent, not conjectural or hypothetical." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). Past wrongs alone are insufficient to confer standing to seek injunctive relief. *Lyons*, 461 U.S. at 102.

Here, Plaintiff does not assert the existence of any future injury arising from the actions of any defendant.[5] Since only injunctive relief may be obtained for Plaintiff's public accommodations claim under Title III and retaliation claim under Title V—but Plaintiff has alleged no facts that would confer standing to seek injunctive relief—these claims fail. In addition, the Complaint fails to plead the elements of these claims, as addressed in Section VI(a)(iii) and (a)(iv), *infra*.

### ii.  Title I Claims

Plaintiff brings three counts arising under Title I of the ADA, each different theories of employment discrimination prohibited by the ADA. In Count III, he alleges that the

---

*Nevada Dep't of Hum. Res.*, 471 F.3d 1033, 1038 (9th Cir. 2006). Furthermore, under Title III of the ADA, there is only individual liability where an individual can be considered an "operator" of a place of public accommodation. *Ewers v. Columbia Med. Clinic*, No. 3:23-CV-0009-IM, 2024 WL 1241536 at *3 (D. Or. Mar. 22, 2024).

[5] Plaintiff states in the Complaint that he seeks "[a] preliminary and permanent injunction," (Doc. 1 at 15) but as discussed above, he fails to allege any future injury.

termination of his involvement as a volunteer at the thrift store constituted employment discrimination. (Doc. 1 at 11-12.) In Count IV, he alleges that the thrift store's failure to engage in the "interactive process" proscribed by the ADA also constituted employment discrimination. (*Id.* at 11-12.) Finally, in Count V, he asserts that thrift store management "regarded Plaintiff as having physical or mental impairments that substantially limited one or more major life activities" in violation of the ADA.[6] (*Id.* at 12-13.)

### 1. Exhaustion of Administrative Remedies

"It is well-established that Title I of the ADA requires parties to file a charge with the Equal Employment Opportunity Commission ("EEOC") prior to filing a complaint in federal court." *Alexander Plank v. SAG-AFTRA*, No. 2:25-CV-07523-AB, 2025 WL 4036442 (C.D. Cal. Dec. 18, 2025) (citing *Zimmerman v. Oregon Dep't of Just.*, 170 F.3d 1169 (9th Cir. 1999)). Where a plaintiff's failure to exhaust applicable administrative remedies is clear on the face of the complaint, dismissal of the complaint is not inappropriate. *Fox v. MHM Health Pros. LLC*, No. CV-23-00190-PHX-DWL, 2024 WL 4364133 at *15 (D. Ariz. Sept. 30, 2024) (citing *McIntyre v. Eugene Sch. Dist. 4J*, 976 F.3d 902, 909 n.6 (9th Cir. 2020)). Here, Plaintiff does not assert anywhere in the Complaint that he filed a charge with the EEOC prior to bringing his Title I claims. (*See* Doc. 1.) Accordingly, dismissal for failure to exhaust administrative remedies is warranted. In addition, the Complaint fails to adequately plead the elements of Plaintiff's Title I claims, as explained below.

### 2. Employee Status

Since Title I of the ADA concerns employment discrimination, an individual bringing claims under this title must qualify as an "employee" of the defendant.[7] *See, e.g.*, *Brown v. Riverside Elementary Sch. Dist. No. 2*, No. CV-21-01569-PHX-DJH, 2023 WL

---

[6] Merely being "regarded as" having a disability is not a cause of action under the ADA. *See* 42 U.S.C. § 12102. Rather, the ADA includes in the definition of "disability" an individual who is "regarded as having . . . an impairment." 42 U.S.C. § 12102(1)(C). As such, Count V will be dismissed.

[7] Title I also provides a cause of action for job applicants discriminated against due to disability, but Plaintiff does not allege he was a job applicant, and that analysis is therefore not relevant. *See* 42 U.S.C. § 12112.

5095066 at *3 (D. Ariz. Aug. 9, 2023). The ADA defines "employee" as an "individual employed by an employer." 42 U.S.C. § 12111(4). Recognizing that this is "a mere nominal definition that is completely circular and explains nothing," the Supreme Court has instructed that the "common-law element of control" in the master-servant relationship "is the principal guidepost that should be followed" in ADA cases. *Clackamas Gastroenterology Assocs.*, *P. C. v. Wells*, 538 U.S. 440, 444-48 (2003) (internal citations and quotation marks omitted).

Six factors are relevant to whether a non-traditional worker, such as a volunteer, qualifies as an employee under the ADA. *Fichman v. Media Ctr.*, 512 F.3d 1157, 1160 (9th Cir. 2008) (citing *Clackamas*, 538 U.S. at 449-50). These include: whether the organization can hire or fire the individual or set the rules and regulations of the individual's work; whether and, if so, to what extent the organization supervises the individual's work; whether the individual reports to someone higher in the organization; whether and, if so, to what extent the individual is able to influence the organization; whether the parties intended that the individual be an employee, as expressed in written agreements or contracts; and whether the individual shares in the profits, losses, and liabilities of the organization. *Id.*

Here, the facts alleged by Plaintiff do not demonstrate that Plaintiff was an employee of the thrift store for purposes of the ADA. Plaintiff was never formally hired; received compensation only in the form of discounts at the thrift store; and did not share in its profits, losses, or liabilities. (*See* Doc. 1.) Moreover, Plaintiff's own allegations undermine the idea that Plaintiff's work was much supervised or that rules and regulations applied to his work. Plaintiff emphasizes that there was "was no formal work schedule," (*id.* at 4-5), "no formal training program" (*id.* at 5), "direction was inconsistent" (*id.*), volunteers "signed a one-page 'training' form," but "there [were] no checklists, no set of do's and don'ts," (*id.*) and "cash-handling practices" were "inconsistent and chaotic" (*id.* at 10). Plaintiff did report to higher-ups presumably employed by the non-profit operating the thrift store, but this fact "would be present in any purely volunteer labor relationship."

*Solander v. S. Ponderosa Stables Inc.*, No. CV-14-02081-PHX-DGC, 2015 WL 4139045 at \*4 (D. Ariz. July 9, 2015). Since Plaintiff's allegations do not show that he was an employee of the thrift store, dismissal of Counts III and IV is appropriate.

### 3. Termination of Employment Claim

Even if the Complaint did sufficiently demonstrate that Plaintiff had employee status at the thrift store, the Complaint also fails to adequately allege the elements of Plaintiff's employment termination claim in Count III. "In order to prevail on an employment termination claim under the ADA, a plaintiff must establish: (1) that he is a disabled person within the meaning of the ADA; (2) that he is qualified, that is, with or without reasonable accommodation (which he must describe), he is able to perform the essential functions of the job; and (3) that the employer terminated him because of his disability." *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996). "[A]n ADA discrimination plaintiff . . . must show that the adverse employment action would not have occurred but for the disability." *Murray v. Mayo Clinic*, 934 F.3d 1101, 1105 (9th Cir. 2019) (emphasis added).

Here, Plaintiff alleges no facts showing that his disabilities played a role in the decision to terminate his involvement as a volunteer at the thrift store, much less that he would not have been told to leave but for his disabilities. (*See* Doc. 1.) Instead, Plaintiff alleges that the March 15, 2025 incident regarding his wallet being left on the back table caused management at the thrift store to become upset with him, ultimately leading to the meeting in which he was told to "hit the road." (*Id.* at 7-8.)  It also appears that accusations—whether founded or not—that Plaintiff was stealing from the cash register were a contributing factor. (*Id.* at 7-8.) Plaintiff's failure to allege facts plausibly showing that he would not have been asked to leave the thrift store but for his disabilities constitutes another basis upon which Count III must be dismissed.

### 4. Failure to Engage in Interactive Process

In Count IV, Plaintiff alleges that the thrift store's failure to engage in the "interactive process" prescribed by the ADA also constituted employment discrimination.

(Doc. 1 at 11-12.) The ADA treats the failure to provide a reasonable accommodation as an act of discrimination if the employee is a 'qualified individual,' the employer receives adequate notice, and a reasonable accommodation is available that would not place an undue hardship on the operation of the employer's business." *Snapp v. United Transportation Union*, 889 F.3d 1088, 1095 (9th Cir. 2018) (citing 42 U.S.C. § 12112(b)(5)(A)). "[N]otifying an employer of a need for an accommodation triggers a duty to engage in an interactive process through which the employer and employee can come to understand the employee's abilities and limitations, the employer's needs for various positions, and a possible middle ground for accommodating the employee." *Id.*

Here, Plaintiff alleges that his statement to thrift store management that he "might be a little more loopy than usual" due to prescription medication changes constituted a request for accommodation under the ADA, and that the thrift store was therefore required to engage in the applicable interactive process. (Doc. 1 at 11-12.) Even though a request for accommodation need not include specific language or even refer to the ADA,[8] it is not possible to interpret Plaintiff's statement as a qualifying request for accommodation. Merely stating that prescription medication changes might render Plaintiff "a little more loopy than usual" is not a request of any sort, and Plaintiff does not allege that the medication changes caused him to have problems completing his typical work. Plaintiff's failure to allege that he made a request for accommodation under the ADA constitutes another basis upon which Count IV must be dismissed.

### iii.  Title III Claim

In Count II, Plaintiff asserts a claim for discrimination in public accommodations in violation of Title III of the ADA. (Doc. 1 at 10.) As a "general rule," Title III mandates that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). The

---

[8] *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1112 (9th Cir. 2000), *vacated on other grounds sub nom. US Airways, Inc. v. Barnett*, 535 U.S. 391 (2002).

statute specifies that "discrimination includes the imposition or application of eligibility criteria that screen out or tend to screen out an individual with a disability." 42 U.S.C. § 12182(b)(2)(A)(i). The Ninth Circuit has explained that to "prevail on a Title III discrimination claim, the plaintiff must show that (1) [he] is disabled within the meaning of the ADA;[9] (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation;[10] and (3) the plaintiff was denied public accommodations by the defendant because of [his] disability." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007).

Plaintiff alleges that "Defendants' policies and practices—including the lack of consistent cash-handling protocols, use of a donation can for a change bank, and the failure to provide adequate internal security—constitute eligibility criteria and policies that discriminate against and screen out individuals with disabilities." (Doc. 1 at 10.) The practices described by Plaintiff, however, are not "eligibility criteria"—clearly, Plaintiff was eligible to volunteer because he held the role for "nearly three years." (*Id.* at 1.) Rather than specific factual allegations, Plaintiff offers only conclusory assertions that he was discriminated against. (*Id.* at 10-11.) Moreover, some of Plaintiff's conclusions are difficult to reconcile; for example, he asserts in Count II that the thrift store should be liable for the "failure to reasonably modify [its] policies and procedures," but also states that he is "able to perform the essential functions of a shift lead with or without reasonable accommodation." (*Id.* at 11.) Plaintiff has failed to show that he was denied public accommodations because of his disability, and this is another basis upon which Count II must be dismissed.

### iv. Title V Claim

In Count I, Plaintiff brings a claim for retaliation and interference under Title V of the ADA. Title V provides that "[n]o person shall discriminate against any individual

---

[9] As discussed above, the Court has already concluded that Plaintiff has sufficiently shown that he is disabled within the meaning of the ADA.

[10] A "sales establishment" that "affect[s] commerce" is a private entity to be considered a public accommodation for purposes of Title III, covering the thrift store that is the subject of this action. *See* 42 U.S.C. § 12181(7)(E).

because such individual has opposed any act or practice made unlawful by this chapter" and that "[i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of . . . any right granted or protected by this chapter." 42 U.S.C. § 12203(a) ("Retaliation"), § 12203(b) ("Interference, coercion, intimidation"). Plaintiff asserts that he "engaged in protected activity by reporting a theft and requesting a proper investigation," and that "Defendants' subsequent actions, including summary termination and threats of criminal prosecution, constitute unlawful retaliation and interference with this protected activity." (Doc. 1 at 10.)

To state a claim for retaliation under the ADA, a plaintiff must allege that "(a) that he or she was engaged in protected activity, (b) that he or she suffered an adverse action, and (c) that there was a causal link between the two." *T.B. ex rel. Brenneise v. San Diego Unified Sch. Dist.*, 806 F.3d 451, 473 (9th Cir. 2015). The standard for "causal link" is but-for causation. *Id.* (quoting *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013)). "Protected activity" means pursuing one's rights under the ADA. *Pardi v. Kaiser Found. Hosps.*, 389 F.3d 840, 850 (9th Cir. 2004). Here, Plaintiff does not allege that he engaged in protected activity, because reporting a theft and requesting a police investigation is not the pursuit of rights under the ADA. Plaintiff also has not alleged but-for causation, because it is unclear based on the Complaint's allegations what actually caused Plaintiff to be asked to leave the thrift store—accusations of stealing, requesting a police report, or leaving his wallet on the back table.

Turning to Plaintiff's claim of interference, under the ADA "[i]nterference should be given a 'broad scope' such that it 'reach[es] all practices which have the effect of interfering with the exercise of rights' but "the ADA's interference provision does not bar any action whatsoever that in any way hinders a member of a protected class." *C.R. Dep't v. Grimmway Enters., Inc.*, 800 F. Supp. 3d 1084, 1118 (E.D. Cal. 2025) (quoting *Brown v. City of Tucson*, 336 F.3d 1181 (9th Cir. 2003)). Here—as discussed above—Plaintiff does not allege that he attempted to exercise any rights under the ADA, and therefore has not successfully pled either interference or retaliation. This constitutes another basis upon

which Count I must be dismissed.

### b.  FLSA and Arizona Minimum Wage Act Claims

In Count VI, Plaintiff asserts that the thrift store violated both the Fair Labor Standards Act ("FLSA") and the Arizona Minimum Wage Act ("AMWA") by failing to "pay him the federal minimum wage of $7.25 per hour, or the Arizona Minimum Wage of $14.35 per hour[.]" (Doc. 1 at 13.) Both the FLSA and the AMWA require employers to pay certain minimum wages to employees. *See* 29 U.S.C. §§ 206, 207; A.R.S. § 23–363(A).

In order to state a claim for failure to pay minimum wage in violation of either the FLSA or the AMWA, a plaintiff must show that: (1) he was an employee under the meaning of the statute; (2) he was covered under the statute; and (3) his employer failed to pay him the applicable minimum wage. *Smith v. Nov. Bar N Grill LLC*, 441 F. Supp. 3d 830, 835 (D. Ariz. 2020) (explaining elements of FLSA minimum wage claim); *Alexander v. Golden Margarita LLC*, No. CV-22-00781-PHX-DWL, 2025 WL 3647983 at *12 (D. Ariz. Dec. 16, 2025) (explaining elements of AMWA minimum wage claim). The AMWA expressly adopts the standards of the FLSA to determine the first element—whether an individual is an employee. A.R.S. § 23–362(D); *Martinez v. Ehrenberg Fire Dist.*, No. CV-14-00299-PHX-DGC, 2015 WL 3604191 at *2 (D. Ariz. June 8, 2015).

The FLSA broadly defines "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). "Employ" means "to suffer or permit to work." 29 U.S.C. § 203(b). The Supreme Court has held that the broad definition of "employ" established in the FLSA "expand[ed] the scope of employment relationships beyond the common-law understanding." *U.S. Equal Emp. Opportunity Comm'n v. Glob. Horizons, Inc.*, 915 F.3d 631, 639 (9th Cir. 2019) (citing *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318 (1992)). As such, the Supreme Court has instructed that in determining employee status under the FLSA, it is appropriate to apply an "economic realities test," which provides that "employees are those who as a matter of economic reality are dependent upon the business to which they render service." *Hollis v. R&R Restaurants, Inc*, 159 F.4th 677, 686 (9th Cir. 2025) (internal citations omitted).

For example, a worker who receives no wages but who is provided "food, shelter, clothing, transportation and medical benefits" by a business is rendered as a matter of economic reality dependent on that business, and should be considered an employee under the FLSA. *Tony & Susan Alamo Found. v. Sec'y of Lab.*, 471 U.S. 290, 293-301 (1985). In contrast, one who receives only a nominal benefit in return for volunteer work is not economically dependent upon the business he performs work for. *Adams v. Palm Beach Cnty.*, 94 F.4th 1134, 1339 (11th Cir. 2024). In *Adams*, the Eleventh Circuit held that volunteers at a golf course who received only discounts on rounds of golf and tips from customers were not economically dependent upon the golf course, and therefore were not employees under the FLSA. *Id.*

Here, Plaintiff's arrangement with the thrift store is analogous to *Adams*; he alleges that he received "up to five items of clothing (valued at $1 each)" and "a 50% discount on all same-day purchases" in return for the work he performed, but these facts do not demonstrate that he was economically dependent on the thrift store. Unlike the workers in *Tony & Susan Alamo Foundation*, who relied on their employer for basic necessities, Plaintiff does not show that his arrangement with the thrift store "was . . . anything more than a perk for [his] volunteer services." *Adams*, 94 F.4th at 1139. Therefore, Plaintiff has not adequately pled that he was an employee under the FLSA, the first essential element of a claim under either the FLSA or the AMWA.

The second element of a claim under either the FLSA or the AMWA is that the alleged employee be covered under the terms of the statute. *Smith*, 441 F. Supp. 3d 830, 835; *Alexander*, 2025 WL 3647983 at *12. Unlike the analysis of whether an employment relationship exists, coverage under the FLSA and the AMWA are two distinct but intertwined inquiries. *See Alexander*, 2025 WL 3647983. Under the FLSA, an alleged employee is covered by the statue if he can establish either "individual" or "enterprise" coverage. *Chao v. A-One Med. Servs., Inc.*, 346 F.3d 908, 915 (9th Cir. 2003). Individual coverage exists if the alleged employee is engaged in interstate commerce. 29 U.S.C. § 206(a)-(b). Enterprise coverage exists if the alleged employer has an annual gross revenue

of $500,000 or greater. 29 U.S.C. § 203(s). Here, Plaintiff has alleged no facts showing that he was engaged in interstate commerce, or that the thrift store had an annual gross revenue of more than $500,000. (*See* Doc. 1.) As such, Plaintiff has failed to allege that he is covered under the terms of the FLSA, the second essential element of his FLSA claim.

Under the AMWA, an employee is not covered if he works for a business with less than $500,000 in gross annual revenue and that business "is exempt from having to pay a minimum wage under [the FLSA]." A.R.S. § 23-362(B)-(C). As discussed above, Plaintiff has not shown that the thrift store was required to pay a minimum wage under the FLSA, and he has not alleged that the thrift store had more than $500,000 in gross annual revenue. (*See* Doc. 1.) As such, Plaintiff has also failed to demonstrate that he is covered under the terms of the AMWA.

In sum, Plaintiff has failed to adequately plead both the first and second elements of his claims for violation of the FLSA and AMWA due to failure to pay a minimum wage, and Count VI must be dismissed.

### c. Claim Under the Arizona Employment Protection Act ("Whistleblower Retaliation")

In Count VII, Plaintiff alleges a violation of A.R.S. § 23-1501(A)(3)(c)(ii), a provision of the Arizona Employment Protection Act ("AEPA"). *See* A.R.S. § 23-1501 *et. seq.* The AEPA enumerates the circumstances in which an employee has a claim against an employer for termination of employment in Arizona. *Id.* Under the provision cited by Plaintiff, an employee has such a claim where his employer "has terminated the employment relationship . . . in retaliation for . . . [t]he disclosure by the employee . . . that the employee has information or a reasonable belief that the employer, or an employee of the employer, has violated, is violating or will violate . . . the statutes of this state." A.R.S. § 23-1501(A)(3)(c)(ii). Plaintiff asserts that he was terminated in retaliation for reporting a potential theft after he discovered $80 missing from his wallet while at the thrift store. (Doc. 1 at 7.)

First, the plain text of AEPA is clear that the statute applies only to "employees"; a

plaintiff must have been in an employment relationship in order to state a claim for a violation of the statute. *See* A.R.S. § 23-1501. The statute does not provide a definition of "employee." *See id.* However, where a term has a "well-known and definite meaning at common law," Arizona courts presume that "the Legislature used the word as it was understood at common law, and . . . will construe it accordingly absent some other special meaning apparent from the text." *Allen v. Sanders*, 346 P.3d 30, 32 (Ct. App. 2015). Under Arizona common law, the "fundamental criterion" in determining whether an employment relationship exists is the "extent of control the principal exercises or may exercise over the agent." *Santiago v. Phoenix Newspapers, Inc.*, 794 P.2d 138, 141 (1990). The Court has already examined the "common-law element of control" to determine whether Plaintiff qualifies as an employee for purposes of his ADA claims, and concluded that under this test, Plaintiff's allegations do not show that he was an employee of the thrift store. *See* Section VI(a)(ii)(2), *supra*.

Moreover, in order to state a claim for relief under A.R.S. § 23-1501(A)(3)(c)(ii), a complaint must identify which Arizona statute the alleged employee believed to be violated. *Painter v. Katerra Inc.*, No. CV-21-00308-PHX-SRB, 2021 WL 2589736 at *4 (D. Ariz. Apr. 5, 2021) ("Even assuming all the factual allegations as true, Plaintiff's bare legal conclusion that Defendant was going to violate some unreferenced statute or constitutional provision . . . is insufficient to survive dismissal."). Here, Plaintiff states only that a theft occurred at the thrift store, and does not identify which Arizona statute he believes was violated. (*See* Doc. 1.)

Finally, a prima facie case of retaliation under A.R.S. § 23-1501(A)(3)(c)(ii) requires that there be a "causal link" between the alleged employee's decision to disclose his belief that a law had been violated and any subsequent adverse action against him. *Levine v. TERROS, Inc.*, No. CV08-1458-PHX-MHM, 2010 WL 864498 at *10 (D. Ariz. Mar. 9, 2010). Here, as previously discussed, Plaintiff's Complaint is unclear regarding what actually caused Plaintiff to be asked to leave the thrift store; the Complaint variously asserts, in contradictory fashion, that accusations that Plaintiff was stealing, Plaintiff's

disclosure of a theft, and Plaintiff's decision to leave his wallet on the back table were the cause. (*See* Doc. 1.)

In light of the foregoing, the Court concludes that Plaintiff has failed to state a claim for relief under A.R.S. § 23-1501(A)(3)(c)(ii).

### d. Arizona Tort Claims

In Count VIII, Plaintiff asserts another claim for wrongful termination, and adds "defamation; false light; [and] intentional infliction of emotional distress." (Doc. 1 at 14) (capitalization omitted).) Plaintiff's allegations in this count are exactly the "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" that "do not suffice" under Rule 8. *See Ashcroft*, 556 U.S. at 678. The entirety of Count VIII reads as follows.

> Defendants' termination of Plaintiff in retaliation for his protected activity (reporting a theft and requesting an investigation) violates the public policy of Arizona and constitutes a common law tort of wrongful termination. Additionally, Defendant "Commander John's" accusation that Plaintiff was "stealing" or "counting money" by running interim reports, made in the presence of Irene Baq, constitutes defamation. These statements were false, communicated to a third party, and caused harm to Plaintiff's reputation. Defendants' conduct also constitutes false light invasion of privacy by placing Plaintiff in a false, negative light before his peers and others, painting him as a thief. This conduct was highly offensive to a reasonable person and done with malice. Finally, the Defendants' threats of criminal prosecution on fabricated charges, the manner of his termination, and the deliberate creation of a hostile and retaliatory environment were so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community, thereby constituting intentional infliction of emotional distress. The malicious and intentional nature of the threats and the deliberate creation of a hostile work environment elevates this behavior beyond a simple workplace dispute.

(Doc. 1 at 14-15.)

None of the causes of action cited by Plaintiff in this Count contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. It is mostly unclear who did what, and when, and what harm Plaintiff suffered. Since Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation," *Ashcroft*, 556 U.S. at 678, Count VIII will be dismissed.

## VI.    Warnings

### a.  Address Changes

If Plaintiff's address changes, Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure. Plaintiff must not include a motion for other relief with a notice of change of address. Failure to comply may result in dismissal of this action.

### b.  Possible Dismissal

If Plaintiff fails to timely file an amended complaint in compliance with this Order, this action will be dismissed with prejudice. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the Court).

Accordingly,

**IT IS ORDERED** that Plaintiff's Application to Proceed In Forma Pauperis (Doc. 2) is **granted**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to File a First Amended Complaint (Doc. 6) is **denied without prejudice**.

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

**IT IS FURTHER ORDERED** that Plaintiff's Complaint (Doc. 1) is **dismissed with leave to amend**. Within **thirty (30) days**, Plaintiff may file a first amended complaint that cures the deficiencies addressed in this Order. If Plaintiff fails to file an amended complaint within thirty days, the Clerk of Court must, without further notice, enter a judgment of dismissal of this action with prejudice.

Dated this 26th day of March, 2026.

_____
Honorable Rosemary Márquez
United States District Judge